[No. 6265. Decided September 25, 1906.]

SPOKANE TERMINAL COMPANY, *Respondent*, v. L. P.
STANFORD *et al., Respondents, and* WASHINGTON
SAFE DEPOSIT & TRUST COMPANY, *Appellant*.[1]

TAXATION—TAX DEED—VALIDITY IN ABSENCE OF SEAL OF COUNTY
TREASURER—EVIDENCE—ADMISSIBILITY. The failure of the legislature
to provide an official seal for county treasurers does not invalidate a
tax deed executed to a purchaser under the provisions of § 103 of
the Revenue Act of 1897 as amended by § 18 of the act of 1899, pro-
viding that on the sale of lands for taxes the county treasurer shall
execute to the purchaser a tax deed, and such deed made by him,
under the official seal of his office, shall be recorded in the same
manner as other conveyances; since the requirement of a seal should
be construed as surplusage and not mandatory, nor is such a deed
inadmissible as *prima facie* evidence in any controversy or suit in
relation to the right of the purchaser, his heirs or assigns, to the real
estate conveyed, as provided by Laws 1897, p. 190, § 14.

SAME—CURATIVE ACTS. The legislature has power, after the ex-
ecution by a county treasurer of a tax deed, to cure any defect by
reason of the fact that at the date of its execution there was no
statute providing for the official seal of the treasurer required by the
law to be used in executing the deed.

TAXATION—STATUTORY PROVISIONS—CONSTRUCTION. The old rule
of strict construction of statutes relating to the assessment and col-
lection of taxes is modified, and they should receive a fair construc-
tion to effect their purpose.

Appeal from a judgment of the superior court for Spokane
county, Kennan, J., entered July 6, 1906, after a trial on
the merits, adjudging title, as between contesting defend-
ants, to lands appropriated in condemnation proceedings.
Affirmed.

*Cullen & Dudley*, for appellant.

*Munter & Jesseph*, for respondents.

DUNBAR, J.—This action was instituted by a petition filed
by the Spokane Terminal Company for the condemnation of
lots 30 and 31, in Second Addition to Third Addition to Rail-

[1]Reported in 87 Pac. 37.

road Addition to Spokane Falls. In the petition it was alleged that the defendants L. P. Stanford and wife were the owners of the lots, and that the defendant the Washington Safe Deposit & Trust Company claimed some lien thereon or interest therein. The Washington Safe Deposit & Trust Company appeared and filed an answer, denying the ownership of the lots by the Stanfords, alleging title in itself; and that the Stanfords occupied the lots as tenants of itself and its predecessors in interest. The Stanfords replied, denying the allegations of ownership in the appellant, and tenancy, and alleged affirmatively title in themselves under a tax deed issued by the treasurer of Spokane county, March 17, 1902. The condemnation proceedings were tried out, and an award of $1,200 made by the jury, and judgment entered appropriating the lots to the terminal company upon payment of the award.

The issues raised by the appellant's answer and the reply of the Stanfords were not tried at that time, and the judgment entered in the condemnation proceedings provided, among other things, that it appearing that there was a contest between the defendants concerning the title to said premises and to the right to the money awarded, the amount of the judgment when paid should be retained in the registry of the court until the determination of the rights of the respective defendants. The award was paid into the court. The issues between the respondents Stanford and wife and the appellant came on for hearing, and upon such hearing, judgment was entered holding that the title to the lots at the time of the condemnation was in the Stanfords and that the appellant had no interest therein, and ordering that the money deposited in the court by the terminal company be paid to the Stanfords. From this judgment the appeal is taken. So that the issues relate solely to the title to the lots condemned. The case was tried without a jury, and no findings of fact or conclusions of law were made or filed.

The assignments are, (1) that the court erred in failing to find the respondents L. P. Stanford and wife were tenants of the appellant's predecessor in interest; (2) the court erred in refusing to hold that the respondents L. P. Stanford and wife were precluded by their relation as tenants from acquiring a tax title to the lots in controversy; (3) the court erred in admitting in evidence over the appellant's objection the treasurer's deed; (4) the court erred in refusing to hold the tax deed void; (5) the court erred in holding that it appeared that the respondents were the owners of the lots condemned and entitled to the award paid in the condemnation proceedings.

It is contended by the appellant that a tenant cannot acquire the demised property as against the landlord at a tax sale, and that a tenant who has entered or held possession of the premises under the landlord cannot, at least without surrendering possession, be heard to dispute the landlord's title; and many cases are cited to sustain this contention. This question, in our judgment, might be disposed of by the statement that a perusal of the record satisfies us that the court was warranted in refusing to find that the respondents were tenants of Stocker, the appellant's grantor, though we do not wish to impliedly hold that the rule that a tenant shall not be allowed to dispute the title of his landlord reaches beyond the particular title under which he enters into possession, or that he may not receive a tax title where he is under no obligation to pay the taxes on the land which become delinquent.

The deed from the county to the respondent L. P. Stanford was offered in evidence over appellant's objection, and the ruling of the court on this is alleged as error. The deed, which is in evidence as plaintiff's exhibit A, is dated March 27, 1902, and contains the following recital by the maker: "Given under my hand and seal of office this 17th day of March, A. D. 1902." There is thereon the impression of a

seal purporting to be the official seal of the county treasurer. Section 103 of the revenue act of 1897, as amended by § 18 of the act of 1899, provided for the sale of lands by the treasurer for the enforcement of the lien of delinquent taxes, and provided for the issuance of a deed as follows: ·

"The county treasurer shall execute to the purchaser of any piece or parcel of land a tax deed. The deed so made by the county treasurer, under the official seal of his office, shall be recorded in the same manner as other conveyances of real estate, and shall vest in the grantee his heirs and assigns, the title to the property. . . ." Laws 1899, p. 301, § 18.

And § 114 provided as follows:

"Deeds executed by the county treasurer as aforesaid shall be *prima facie* evidence in all controversies and suits in relation to the right of the purchaser, his heirs and assigns, to the real estate thereby conveyed, of the following facts: . . ." Laws 1897, p. 190.

The contention of the appellant is that, the law not having prescribed any official seal for the county treasurer, no official seal could therefore be attached by the county treasurer; that the deed, not having complied with the mandatory requirements of the law, is therefore void; that it not being such a deed as is required by the statute, it was not *prima facie* evidence, and that its admission in evidence was error. This construction of the law is suggested largely by the Nebraska cases, initiated in *Sutton v. Stone*, 4 Neb. 319, cited by appellant, and which rule was followed in many subsequent Nebraska cases. But the rule laid down in the Nebraska cases we think stands substantially alone in the adjudications in the United States. The United States cases cited to sustain this doctrine simply, as is their uniform custom, sustained the construction placed upon the state statutes by state courts. In the case at bar the legislature, after making a provision that the deed should be made under the official seal of the treasurer's office, failed to provide any official seal; so that there is no violation of the law by the treasurer or omission of any of the

mandatory provisions of the statute—mandatory in the sense
of being harmonious and capable of being performed. Either
it was the intention of the legislature that the treasurer should
establish or make an official seal and use it (and if that was the
intention, then the law was complied with in this case), or
there was an inadvertence and omission on the part of the
legislature in not providing the seal which it had in mind.
For we will not impute to the legislature the intention to
provide for the issuance of so important an instrument as a
tax deed with the deliberate intention of so framing the law
that the deed could not be executed at all. We think that
"under the official seal of his office" must be construed as sur-
plusage, not having any relation to or connection with any
other provision made in the act, and that it is not a manda-
tory requirement. The mandatory requirement is that the
county treasurer shall execute to the purchaser a tax deed,
and that such deed shall be recorded as other conveyances of
real estate.

The Mississippi case cited by appellant— *Day v. Day*, 59
Miss. 318—does not sustain its contention. There the stat-
ute provided that the auditor should affix his official seal, and
that he had an official seal which he could affix is shown by
the language of the court, viz: "the auditor has an official seal
and it should have been affixed to the conveyance." Even in
Nebraska the doctrine contended for by appellant has been
repudiated in later cases. In *Orcutt v. Polsley*, 59 Neb. 575,
81 N. W. 616, the court, in passing on this same contention,
said:

"It is true that section 491c of the code of civil procedure
does require the county clerk, the clerk of the district court,
the county treasurer, . . . to certify, under their hands
and official seals . . . It will be noted that some of
the officers named in the statute are required by law to have
an official seal, while others are not so required. It would
seem to be a very reasonable interpretation of the statute

4—44 WASH.

to construe it, which we do, as being the intention of the legislature that such officers mentioned therein as the law required to have an official seal should certify under their hands only, as was done by the treasurer in this instance. It is not presumed that the legislature intended that an officer should do what it is impossible for him to perform."

This construction of the statute in question was approved and followed in *Young v. Wood*, 63 Neb. 291, 88 N. W. 528.

But even if it should be conceded that the deed was not a legal deed as executed, the legislature by act approved February 21, 1903, enacted that the county treasurer should have an official seal, and provided as follows:

"Sec. 2. In all cases in which the county treasurer of any county in the state of Washington shall have executed a tax deed or deeds prior to the taking effect of this act, either to his county or to any private person or persons or corporation whomsoever, said deed or deeds shall not be deemed invalid by reason of the county treasurer who executed the same not having affixed a seal of office to the same or having affixed a seal not an official seal; nor shall said deed or deeds be deemed invalid by reason of the fact that at the date of the execution of said deed or deeds there was in the state of Washington no statute providing for an official seal for the office of county treasurer." Laws 1903, p. 13.

It is contended by the appellant that this statute was void because it had a retroactive effect and undertook to revivify a dead and void law. It is conceded by all authority that, within the constitutional power of the legislature and under proper limitations, it may pass acts curing or validating irregularities, and that this may be done in tax proceedings. So that the test is, whether or not the defect is jurisdictional, for if not jurisdictional but a mere omission or irregularity, the legislature has a right by retrospective statutes to cure it. This is a mere defect or omission, for the legislature might have dispensed with a seal altogether, just as it had been doing for years before, and the statute would have been just as effective without the interjection of the words which

are complained of, as with them. Mr. Cooley, in his work on Taxation, vol. 1 (3d ed.), at page 480, quotes approvingly from *State ex rel. Steel v. Phillips,* 137 Mo. 259, 38 S. W. 931, where it is said:

"Many statutory regulations are designed for the information of tax officials, and a compliance is not a condition precedent to the validity of the tax,"

and the author in this connection says:

"All legislation must be supposed to take into account the possible, if not probable, mistakes and irregularities of officers in executing the provisions of the law, and it is hardly reasonable to infer an intent, on the part of a legislative body, that a failure of administrative officers to comply with any provision made for the benefit of the state exclusively, or merely as a guide in orderly proceedings, should deprive the state of all benefit to be deprived from a compliance with other provisions that embody the main purpose and object of the law."

In this case the provisions which embody the main purpose and object of the law were complied with. In speaking of curative legislation, it is said by Black on Tax Titles, § 483:

"The objection most frequently urged against this species of legislation is, that it impairs vested rights. But no party can be said to have a vested right in a defense based upon defects or irregularities not affecting his substantial equities. Curative statutes indeed may disturb vested rights, and if so they are void. But with the limitations we are here taking for granted, the objection is not tenable. A learned judge has said: 'All acts curing irregularities in legal proceedings necessarily divest vested rights of the parties, by closing the mouths of those who could otherwise avail themselves of such irregularities to escape from the fulfillment of what is a moral obligation, and, but for the irregularity, would be a legal liability. So whenever formal defects in the execution or acknowledgment of deeds, mortgages, or other conveyances are remedied by legislation, those who might have pleaded and relied on such defects are debarred of that which otherwise would have been a legal vested right. To deny the validity of such laws would be to run the plow-share through

hundreds of titles which are founded and repose in security upon them.' "

Again it is said:

"When the legislature, by a valid exercise of its authority, has conferred a power to act, and prescribed the mode of action, a substantial compliance with the mode will be essential to a valid exercise of the power, but if the power be irregularly or defectively exercised, and for that reason invalid, the legislature may, by subsequent action, cure any such defect or irregularity, the requirement of which was originally within its discretion. . . ."

In this case the power, by reason of the incongruity in the legislative enactment, was defectively exercised, and the requirement was originally within the discretion of the legislature. So that, in the absence of any constitutional inhibition, it would seem certain that the legislature had a right under authority generally to remedy the defect. The old rule of strict construction in relation to tax proceedings has been very much modified of late years, and necessarily so to permit the government to carry on its legitimate functions by the enforcement of its tax laws. It was said by the supreme court of the United States in the case of *Turpin v. Lemon*, 187 U. S. 51, 23 Sup. Ct. 20, 47 L. Ed. 70:

"Laws for the collection and assessment of general taxes stand upon a somewhat different footing and are construed with the utmost liberality."

And this court, in passing upon this question in *Mills v. Thurston County*, 16 Wash. 378, 47 Pac. 759, said:

"But it is evident that, if the statute is to receive such a literal construction, it would serve little or no purpose. While there is some conflict in the authorities as to whether revenue statutes should be given a liberal or strict construction, it seems to us that the better rule is that they should receive a fair construction to effect the end for which they were intended."

And we see no reason now for departing from the rule thus stated.

A fair construction should be given to any law whether it be a law in relation to the collection of taxes or not. We think no error was committed by the court in admitting the deed in evidence, and we may state here that, in passing upon this question, we have examined not only the briefs filed in this particular case, but briefs in other cases which are pending in this court on the construction of this statute in question. There are other errors alleged, in relation to the unintelligible character of the delinquent tax certificates, their premature issue, and questions of notice, but we think they are all without substantial merit, and that all such questions have been practically decided by this court in *Luff v. Gowan*, 38 Wash. 504, 80 Pac. 766; *Taylor v. Huntington*, 34 Wash. 455, 75 Pac. 1104; *North Yakima v. Scudder*, 41 Wash. 15, 82 Pac. 1022, and many other cases.

There being no reversible error committed by the court, the judgment will be affirmed.

MOUNT, C. J., HADLEY, FULLERTON, ROOT, and CROW, JJ., concur.