# STATE EX REL. MARY G. LICHTSCHEIDL v. GEORGE H. MOELLER.[1]

July 7, 1933.

No. 29,522.

[1]Reported in 249 N. W. 330.

*Francis M. Smith* and *George W. Markham,* for appellant.

*Harry H. Peterson,* Attorney General, *William S. Ervin,* Assistant Attorney General, *M. F. Kinkead,* County Attorney, and *John A. Pearson,* Assistant County Attorney, for respondent.

*OLSEN, Justice.*

Mary G. Lichtscheidl, hereinafter referred to as plaintiff, in January, 1933, commenced proceedings to foreclose by advertisement a real estate mortgage on property in Ramsey county. She designated February 27, 1933, as the date of sale of the mortgaged premises, to be made by the sheriff of Ramsey county, respondent herein. On that date the sheriff adjourned the sale to March 13, 1933. Plaintiff, being thereafter informed that the sheriff would not hold said sale on March 13 or at any time prior to May 1, 1933, petitioned for a writ of mandamus to command the sheriff to conduct said foreclosure sale on March 13, 1933. An alternative writ of mandamus so commanding the sheriff to do, or to show cause why he should not so do, was issued by the district court on February 27, 1933, returnable before the court on March 4, 1933. On that date the parties appeared before the court, and some minor amendments to the petition and alternative writ were allowed. The respondent then demurred to the amended petition and writ on the ground, among others, that the facts therein stated were not sufficient to constitute a cause of action. The court, after hearing the parties, by order dated March 10, 1933, sustained the demurrer, quashed the alternative writ, and denied any permanent writ. Judgment was so en-

tered on March 13, 1933. From the order and judgment plaintiff took this appeal.

The question presented is whether the court erred in refusing to grant a peremptory writ of mandamus commanding the sheriff to conduct the mortgage foreclosure sale on March 13, 1933. While the petition and alternative writ, reciting the petition, allege also that the sheriff wrongfully adjourned the sale on February 27, the petition asks for a writ commanding the sheriff to hold the sale on March 13, and the question for the trial court was, and here is, whether the plaintiff, on her petition, was entitled to such peremptory writ.

What was done on and after March 13 does not appear from the record before us. It may be inferred that the sheriff, under authority of L. 1933, p. 46, c. 44, passed and approved on March 2, 1933, adjourned the sale until May 1 or 2, 1933. Much of the argument here is directed to the question of the constitutionality of this law, and we give first consideration to that question. The act provides:

"Sec. 2. In all cases where any sheriff has heretofore and subsequent to February 23, 1933, postponed any such mortgage foreclosure sale, the said sheriff may again postpone the sale, provided, however, that the date to which said sale is finally postponed shall be subsequent to April 30, 1933, and shall not be more than ninety days from the date upon which said sale was originally advertised to be held, and provided further, that the said sheriff shall post a notice of such final postponement at one of the entrance doors of the court house of the county where the sale was originally advertised to be held, at least three weeks prior to the date to which the said sale shall be finally postponed.

"Sec. 3. Any postponement heretofore made by any sheriff of any such mortgage foreclosure sale, without the publication of a notice of postponement in a newspaper, is hereby validated and is hereby declared to be legal and binding in all respects."

In effect the act authorizes the sheriff to adjourn a mortgage foreclosure sale, advertised to be held on a date prior to May 1, 1933, for a period not to exceed 90 days from the date originally set for

such sale and to a date subsequent to April 30, 1933, and validates adjournments within those limits made subsequent to February 23, 1933. The contention is that this act impairs the obligation of plaintiff's mortgage and violates art. 1, § 11, of the state constitution. Does the fact that the remedy of foreclosure sale under mortgages was authorized to be postponed for not exceeding 90 days render the act invalid? The act affects the remedy, and not otherwise the contract. While there are a number of decisions stating that the legislature has power to change the remedy without violation of the constitutional prohibition against impairing the obligation of the contract, that rule has its limitations. The correct rule is well stated in Harrison v. Remington Paper Co. (C. C. A.) 140 F. 385, 392, 3 L.R.A.(N.S.) 954, 5 Ann. Cas. 314, opinion by Judge Sanborn, as follows:

"Any repeal or change of any of these remedies which substantially obstructs or retards the enforcement, or lessens the value of the agreement, impairs its obligation, and is unconstitutional and void. Any repeal or change of remedies which does not substantially diminish the value of the agreement or retard or obstruct its enforcement escapes the inhibition of the Constitution and is valid."

That case arose under the constitution of Kansas, which is the same as ours on that question.

In Fourth Nat. Bank v. Francklyn, 120 U. S. 747, 748, 7 S. Ct. 757, 30 L. ed. 825, the action arose under the laws of Rhode Island, and was by a creditor of a corporation to recover from a stockholder thereof, liable under the Rhode Island law. At the time the debt was contracted and the liability arose the law provided that, upon suit against the corporation and recovery of judgment, the person and property of the stockholder could be taken by the creditor on writ of attachment or execution issued in that suit; or, at the option of the creditor, he could proceed by bill of equity against the stockholder in the supreme court. Thereafter and before action was brought, the legislature of Rhode Island repealed the prior law and, in place thereof, enacted that all proceedings to enforce the liability of stockholders shall be either by suit in equity or by an action of

debt upon the judgment obtained against the corporation, and that no person shall be imprisoned nor the property of any such person be attached upon a judgment obtained against the corporation of which he is or was a stockholder. The new statute abolished the creditor's right to take the person of the stockholder or to take his property on attachment or execution on a judgment against the corporation. The court held that, as the new statute did not annul the liability of the stockholder, but only modified the form of remedy and the rules of evidence, it was constitutional even as to debts contracted before its enactment.

So in Penniman's Case, 103 U. S. 714, 26 L. ed. 602, the court held that the abolition of the imprisonment of a debtor was not such a change in remedy as to impair the obligation of prior contracts, other sufficient remedies remaining.

In Curtis v. Whitney, 80 U. S. 68, 20 L. ed. 513, a statute of Wisconsin requiring the holders of tax sale certificates theretofore or thereafter issued to serve 90 days' notice on the owner or occupant of the land sold of the holder's application for a deed, after expiration of the redemption period, in order to perfect title, was held not to impair the contract of the certificate holder, although his certificate of sale was issued before the enactment of that statute and under a law which did not require such notice.

Tennessee v. Sneed, 96 U. S. 69, 24 L. ed. 610, holds that a state legislature may alter or modify the remedy under a contract without impairing its obligation, provided an effectual remedy for its enforcement is left.

In Barnitz v. Beverly, 163 U. S. 118, 16 S. Ct. 1042, 41 L. ed. 93, Tennessee v. Sneed, 96 U. S. 69, 24 L. ed. 610, is qualified to this extent, that the change or modification must not seriously interfere with the enforcement of the contract.

State ex rel. Blockwitz v. Diehl, 198 Wis. 326, 223 N. W. 852, holds that a remedy may be changed or modified provided it leaves an adequate remedy, though less convenient, prompt, or speedy.

12 C. J. p. 1067, § 727, states the general rule that a statute which merely affects the nature or form of the remedy for the enforce-

ment of existing contracts is valid, but it is beyond the power of the legislature to change the substantive rights of the parties.

"Thus a statute is void as impairing the obligation of a contract if it takes away all remedy for the enforcement of the contract, or if it leaves no substantial remedy therefor. Within these limitations, however, the legislature may alter or abolish particular remedies, and may substitute one remedy for another. It has frequently been said by the courts that the remedy available under the statute must be substantially equivalent in coercive force to that provided by law when the obligation was contracted; but on the other hand, there is abundant authority for the rule that the new or remaining remedy, if substantial, need not be so effective or advantageous as the old." The cases are cited in the notes on pages 1067, 1068, 1069, 1070.

1 Dunnell, Minn. Dig. (2 ed. & Supp.) § 1628, states the rule that any subsequent law of the state which so affects the remedy as substantially to impair and lessen the value of the contract impairs its obligation and is unconstitutional, but that changes of remedy which do not materially lessen the value of the contract are valid. The cases are cited in the notes. Architectural Decorating Co. v. National Surety Co. 115 Minn. 382, 132 N. W. 289, affirmed in 226 U. S. 276, 33 S. Ct. 17, 57 L. ed. 221, may be referred to.

The legislature may enlarge or lessen the time limited for the commencement of an action, except that it cannot withhold a reasonable time for appeal to the courts or impair the obligation contained in the contract or impair vested property rights. Thus it cannot shorten the time for the commencement of actions on contracts without giving a reasonable time after enactment of the law for the commencement of actions which, although not barred by the prior law, would be barred by the new law if such reasonable time were not given. 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 5589, pp. 207, 208, 209, and notes.

The adjournment of mortgage foreclosure sales is not a new provision in our statute. 2 Mason Minn. St. 1927, § 9608, provides that such sales may be adjourned from time to time and notice

418

thereof published, all at the expense of the party requesting it. No doubt such adjournments must be for a reasonable time. The statute has been in force since early times in this state, and numerous mortgage sales have been so adjourned. See Bennett v. Brundage, 8 Minn. 385 (432), and later cases.

Under this statute, either the mortgagor or the mortgagee can request and obtain such adjournments. It follows that the mortgagee did not have the unqualified right to have the sale made on the date fixed. Such right was subject to the limitation that the sale might be adjourned at the request of the mortgagor, or the grantee of the mortgagor, for reasonable time or times. The new statute changes the old law only to the extent of giving the sheriff authority to adjourn such sales for not to exceed 90 days, and that authority is limited to sales advertised to be held between February 23 and May 1, 1933. That cause existed for authorizing such adjournments will appear when the question of emergency legislation is considered later herein.

The petition and alternative writ here for review do not show that L. 1933, p. 46, c. 44, here in question, substantially or seriously obstructs or retards the enforcement or lessens the value of plaintiff's mortgage contracts. The act is valid, and the order sustaining the demurrer was proper. Counsel have agreed that the issues in the case must be determined as of the date of the hearing in the court below on March 4, 1933, and we are so considering the record.

The petition and alternative writ do not allege that plaintiff's security under the mortgage is not sufficient to satisfy plaintiff's entire claim, with interest and costs up to the sale to be made on or after May 1, or that the mortgagors are not solvent and personally responsible to pay any deficiency if there is such deficiency.

■ The act here in question was one of a number of emergency laws passed at the 1933 legislative session on account of the financial and business crisis existing during February and March of that year. On February 24 the governor issued an executive order providing that foreclosures of mortgages on real estate upon which the mortgagor has his residence, which was the situation here presented,

and foreclosures of chattel mortgages on certain classes of property, be stayed until May 1, 1933, or until further order. We take judicial notice of the financial and business conditions and the serious crisis existing during February and March of this year. Minnesota W. G. C. M. Assn. v. Huggins, 162 Minn. 471, 203 N. W. 420. On the morning of March 4 all banks in this state closed and remained closed until after March 13, with the exception of a few opening a day or two before that date. On March 6, by order of the president, the banks in all states closed and remained closed for several days.

The legislature, coming from all parts of the state, at the time it passed L. 1933, p. 46, c. 44, had full knowledge of the critical situation then existing and deemed it necessary to enact the law as an emergency measure, under the police power, temporarily to protect owners of property and homes and for the public welfare and protection. The act, not being shown to cause any serious or substantial damage to holders of mortgages, was a valid exercise of that power and is not unconstitutional. 12 C. J. p. 907, § 415B, and notes; Marcus Brown Holding Co. Inc. v. Feldman, 256 U. S. 170, 41 S. Ct. 465, 65 L. ed. 877; Edgar A. Levy Leasing Co. Inc. v. Siegel, 258 U. S. 242, 42 S. Ct. 289, 66 L. ed. 595.

■ The question of the discretionary power of the sheriff to adjourn the sale until on or after May 1, without the authority conferred by the act of March 2, has been argued. We are not prepared to hold that the sheriff had any such discretion. Without request from one of the parties, he would have no such discretion in the situation here presented, no imperative obstruction to the sale being shown. He had such authority on March 13, under the act of March 2. Singer v. Novak, 167 Minn. 208, 208 N. W. 654, involved a sale under a decree in a foreclosure by action and was not governed by the law as to foreclosures under a power of sale.

■ The adjournment of the mortgage foreclosure sale from February 27 to March 13 was made by the sheriff in compliance with the governor's executive order of February 24. The validity of that order is presented and argued. The time and manner of holding such foreclosure sales has heretofore been and is regulated by stat-

ute. It is a matter of legislation. The legislature was in session during February and March of this year. With all due respect to the governor's great power to see that the laws of the state are faithfully executed, he is not vested with any legislative power, and no such power can be conferred upon him by the legislature. As governor he can enforce the laws but cannot change or suspend them. The power of the governor, as commander-in-chief of the military forces of the state after they are called out to execute the laws, when necessity exists, is not here in question. It may be noted that this power is limited to calling out such forces "to execute the laws." Minn. Const. art. 5, § 4.

By § 3 of the act of March 2, 1933, the action of the sheriff in adjourning the sale on February 27 is validated. This is a curative provision and valid as such.

The order and judgment appealed from are affirmed.

